```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ROBERT AGNEW,<br><br>        Plaintiff,<br><br>        v.<br><br>RELIANCE ELECTRIC COMPANY, et al.,<br>        Defendants. | CIVIL NO. 10-3942(NLH)(AMD)<br><br>OPINION |

**Appearances:**

DANIEL J. MANN
1845 WALNUT STREET
25TH FLOOR
PHILADELPHIA, PA 19103

    On behalf of plaintiff

JEFFREY PHILIP BRIEN
O'BRIEN & RYAN LLP
HICKORY POINTE
2250 HICKORY ROAD, SUITE 300
PLYMOUTH MEETING, PA 19462

    On behalf of defendants Reliance Electric Company, Rockwell
    Automotion, Inc., Riverside Company, Integrated Power
    Services, LLC, and Baldor Electric Company

RONALD L. DAUGHERTY
SALMON RICCHEZZA SINGER & TURCHI
WOODCREST PAVILLION
10 MELROSE AVENUE
SUITE 450
CHERRY HILL, NJ 08003

    On behalf of defendants Inta Rota, Inc. and Inta Rota Machine
    Company, Inc.

**HILLMAN**, **District Judge**

    Presently before the Court are the motions of defendants to

dismiss plaintiff's claims that defendants are liable for the

injuries he sustained when a roll of aluminum fell off a "Slitter" machine's accompanying cart and onto him. Plaintiff claims that defendants, including John Doe defendants, sold a defective product, which had been negligently designed and manufactured. In their motions to dismiss, defendants argue that plaintiff's complaint fails to meet the basic pleading standards required under the Federal Rules. Plaintiff has opposed defendants' motions. For the reasons expressed below, defendants' motions will be denied.

## BACKGROUND & ANALYSIS

According to his complaint,[1] on June 26, 2008, plaintiff Robert Agnew was working at Aleris International, Inc., where he was operating a texture shear line drive, or a "Slitter."[2] Plaintiff and several co-workers were in the process of removing a roll of aluminum that had gone through the Slitter and had been transferred to the cart used to transport the aluminum rolls. While plaintiff was preparing to insert a cardboard separator, one of the rolls of aluminum fell off the cart and rolled onto him, knocking him over and pinning him to the ground under the roll. Plaintiff claims that this occurrence resulted in significant and

---

[1] Plaintiff originally filed his case in New Jersey Superior Court, and amended his complaint prior to defendants' removal of his action to this Court. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

[2] Defendants explain that a "Slitter" is a type of machine that cuts sheets of materials into smaller sheets, strips, or rolls.

permanent injuries to his legs, chest, back and other areas of his body, including right tibia and fibula fractures requiring surgery and the insertion of a rod, a torn meniscus in the right knee requiring surgical correction, and fractured vertebrae.

Plaintiff has brought suit against several defendants--Reliance Electric Company, Rockwell Automotion, Inc., Riverside Company, Integrated Power Services, LLC, Baldor Electric Company, Inta Rota, Inc., and Inta Rota Machine Company, Inc.[3]--as well as John Doe defendants, alleging strict liability pursuant to N.J.S.A. 2A:58C-2 for selling a defective product, and negligent design and manufacturing of that product.  Defendants have moved to dismiss plaintiff's claims, arguing that plaintiff has failed to properly plead his claims to provide them with proper notice of the claims against them.  Specifically, defendants argue that plaintiff's blanket claims of strict liability and negligence against seven companies, without any identification of which company committed what acts, does not fulfill the requirements under Federal Civil Procedure Rule 8 and Bell Atlantic v. Twombly, 127 S. Ct. 1955 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  Additionally, defendants contend that plaintiff's complaint must be dismissed because plaintiff does not identify the particular

---

[3]Plaintiff had also named Jewett Automotion, Inc. as a defendant.  On August 19, 2010, plaintiff filed a stipulation of dismissal with prejudice with Jewett Automation, Inc. based on that entity's representation that it was not involved in the sale, manufacture or design of the Slitter machine at issue in this case.

3

Slitter machine, or how the Slitter machine was defective or otherwise involved in plaintiff's alleged injury, since plaintiff only alleges that a roll of aluminum fell off the accompanying cart. As a result, defendants argue that they cannot properly defend themselves against these generic, broad claims.

In response to defendants' motions, plaintiff explains that the Slitter and cart were originally sold to plaintiff's employer's predecessor in 1970. Even though the Slitter and cart have been in use since their installation, all of the markings and identification plates have been removed from the product, or have been rendered illegible. Plaintiff's employer, Aleris, still possesses the original manual and documentation, which identifies Reliance Electric Company and Inta Rota Machine Company. That documentation, however, does not specify those companies' roles in the design, manufacture or sale of the Slitter and cart. Based on that documentation, plaintiff has named these two entities as defendants.

With regard to the other defendants, Rockwell Automotion, Inc., Riverside Company, Integrated Power Services, LLC, Baldor Electric Company, Inta Rota, Inc., plaintiff's counsel's research has revealed these entities are successors-in-interest to the companies named in the documents from the 1970s. Thus, plaintiff has named these entities as defendants as well. Moreover, due to the uncertainty of what company designed, manufactured and sold the

4

Slitter and cart, plaintiff has named John Doe defendants to protect his claims should it be determined that an unnamed entity was involved.

In opposition to defendants' motion challenging the substance of his complaint, plaintiff argues that at this stage of the case and with the information he possesses, his complaint meets the pleading requirements.  Furthermore, plaintiff argues that because only defendants possess the information regarding which entities designed, manufactured and sold the Slitter and cart, the discovery process will quickly resolve those issues.

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis

5

for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting

6

<u>Iqbal</u>, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  <u>Id.</u>; <u>see also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991)).

    Here, defendants have been put on notice that plaintiff claims that they, as the entity or entities that designed, manufactured and sold the Slitter and cart to Aleris's predecessor in 1970, caused his injuries.  Defendants have also been put on notice that plaintiff's injuries were sustained when a roll of aluminum, which had just been processed through the Slitter and transferred to the accompanying cart, fell onto him.  Even though defendants complain that plaintiff has not indicated each of their specific involvement with the Slitter and cart, they know whether or not they were part

7

of the Slitter's design, manufacture or sale.  Moreover, although defendants complain that plaintiff has not explained the Slitter and cart's defect, they are aware that plaintiff sustained injuries from an aluminum roll during the Slitter processing, and that the intended outcome of the Slitter process is not for the processed metal to fall onto the machine's operator.[4]  While we take the <u>Twombly/Iqbal</u> standard seriously and consider this matter a close call, the facts as pleaded in plaintiff's complaint raise a reasonable expectation that discovery will reveal evidence to prove plaintiff's strict liability and negligent design and manufacture claims.

Should the discovery process show that none of these defendants were involved with the Slitter and its cart,[5] or that plaintiff's injuries did not result from a design or manufacturing defect, defendants may then move for judgment in their favor.  At

---

[4]Defendants argue that plaintiff's injury was sustained when the aluminum fell off the cart, and that plaintiff has not indicated how the Slitter was involved.  At this point, plaintiff's allegations that the Slitter and cart units, used conjunctively, were defective and caused his injuries are sufficient to state a viable claim.  Defendants may assert defenses on this basis, or otherwise move for judgment in their favor should discovery reveal information to discredit plaintiff's position.

[5]Information as to the entity responsible for the machine's design, manufacture and sale should readily be determined during the early stages of discovery, and should quickly resolve the identification issues.  If, however, the resolution of these issues proves to be more complicated, that further demonstrates that plaintiff could not have been any more specific in his complaint at the initial pleading stage.

this point, however, to credit defendants' arguments for the dismissal of plaintiff's claims would require plaintiff to have had the benefit of discovery prior to the filing his complaint.  Of course some investigation must be undertaken prior to the filing of a complaint, but where it is evident that a plaintiff has gathered sufficient information to plead facts that, if proven true, would support viable claims, such a standard is unreasonable and not contemplated by the Rules or <u>Twombly/Iqbal</u>.

Consequently, defendants' motions to dismiss will be denied without prejudice to their right to file subequent motions to dismiss or for judgment in their favor should they have a proper basis to do so in the future.[6]  An appropriate Order will be entered.

Date: March 30, 2011                       s/ Noel L. Hillman

At Camden, New Jersey                    NOEL L. HILLMAN, U.S.D.J.

---

[6]Defendants have alternatively requested that plaintiff file a more definite statement pursuant to Fed. R. Civ. P. 12(e). Because the Court has found plaintiff's current complaint to be sufficient, there is no need to require plaintiff to file an amended pleading.

9